UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CATERPILLAR INC.,

    Plaintiff,

v.

R & R STEEL CONSTRUCTION
COMPANY INC.,

    Defendant/Third Party Plaintiff,

v.

R. T. ELECTRIC SERVICE, LLC,

    Third Party Defendant.
                                                 /

File No. 2:10-cv-21

HON. ROBERT HOLMES BELL

**O P I N I O N**

This matter is before the Court on multiple motions in limine filed by Plaintiff Caterpillar Inc. ("Caterpillar") and Defendant R & R Steel Construction Company Inc. ("R&R"). Defendant R. T. Electric Services, LLC ("R. T. Electric") has also filed several responsive briefs. Each motion will be discussed in turn.

**A. R&R's Motion to Exclude MIOSHA Evidence (Dkt. No. 81)**

R&R has moved the Court to exclude an inspection report and citations prepared and issued by the Michigan Occupational Safety and Health Administration ("MIOSHA") in the wake of the accident involving Mr. Dalluge. Although the reports and citations are public records, R&R argues that they are derived from untrustworthy hearsay statements. Plaintiff

does not object to the exclusion of the report and citations. (Dkt. No. 115.) Accordingly, the MIOSHA report and citations will be excluded.

Plaintiff requests, however, that exclusion should not apply to the witness interview statements taken in the course of the MIOSHA investigation, or to a letter sent to MIOSHA by R. T. Electric owner Roy Thoune. The Court finds that the witness interview statements in question may be used for impeachment purposes, but should otherwise be excluded in favor of live testimony.

**B. Caterpillar's Motion to Exclude Evidence of Settlement Amount, Fees and Costs (Dkt. No. 84)**

Caterpillar moves the court to bar and prohibit evidence or testimony regarding the amount Caterpillar paid in settlement of the Dalluge suit and the amount Caterpillar incurred in defense fees and costs in that action. (Dkt. No. 84.) Defendants oppose Caterpillar's motion on grounds that the reasonableness of the settlement amount and attorney's fees is in dispute, and that evidence regarding those amounts is therefore essential.

Given the position now taken by R&R in response to this motion in limine and in the parties' proposed final pretrial order, it is now apparent that the reasonableness of the Dalluge settlement should be resolved by the Court. Although Defendants are correct to point out that motions in limine are not a proper forum to raise dispositive issues, the reasonableness of the Dalluge settlement was clearly raised and argued by Caterpillar in its motion for summary judgment.

Caterpillar's expert, attorney Stephen Afendoulis, after examining potential

> liability issues, damages, funds available to satisfy a potential judgment, and attorney fees typically charged in the locale, concluded both that the settlement itself was reasonable and that the fees charged by Williams Venker & Sanders for their representation of Caterpillar were reasonable. (SUMF, ¶ 55-57).  R&R has not offered or disclosed any expert testimony to dispute Mr. Afendoulis' opinions.  There can hardly be a dispute, therefore, that Caterpillar acted reasonably in settling the Dalluge suit.

(Dkt. No. 51 at 14.)  Although the Court did not address this particular issue in its opinion denying summary judgment, the issue was clearly raised and Defendants had an opportunity to respond to Caterpillar's argument.  Thus, the Court may appropriately address the reasonableness of the Dalluge settlement in the interest of streamlining the case for trial.

As it is undisputed that R&R refused Caterpillar's demand that R&R indemnify and defend Anchor of and from the Dalluge lawsuit, (Dkt. No. 123 at 11),  R&R cannot now contest the settlement amount unless Caterpillar acted unreasonably or in bad faith.  *Grand Trunk Western R.R., Inc. v. Auto Warehousing Co.*, 262 Mich. App. 345, 353 (2004) ("If an indemnitor has notice of an action and declines the opportunity to defend it, the general rule is that the indemnitor will be bound by any reasonable, good faith settlement the indemnitee might thereafter make.").  Although Defendants assert that the reasonableness of the settlement is contested, they have not produced or alluded to any evidence in opposition to Caterpillar's proffered expert opinion.  Review of Defendants' summary judgment briefs, motions in limine, and proposed pretrial order yield nothing which could raise an issue for determination at trial respecting the reasonableness of the settlement.  Additionally, the settlement amount has already been approved and sanctioned by Hon. Gordon J. Quist in the

underlying action. (*Dalluge v. Anchor Coupling*, Case No. 2:08-cv-289, Dkt. No. 23.)

Furthermore, the Court recognizes the potential danger that evidence regarding the settlement amount and fees incurred in the Dalluge suit could distract the jury from consideration of the breach of contract issue before it. The actual settlement amount is not necessary or relevant to the jury's determination. Accordingly, Plaintiff's motion to exclude evidence and testimony regarding the settlement amount, defense fees, and costs incurred in the Dalluge lawsuit will be granted.

## C. Caterpillar's Motion to Bar Testimony by Joseph Gille (Dkt. No. 86)

Caterpillar moves the Court to bar any testimony from Joseph Gille regarding statements allegedly made to him by Paul Dalluge as to the need to lock out/tag out the crane at issue in this lawsuit and any conclusions or assumptions Mr. Gille reached as a result of those statements.

At his deposition, Mr. Gille testified that Paul Dalluge told him that lock out/tag out was no longer required. Such statements are hearsay. Defendants do not dispute this, nor do they identify any established exception to the rule against hearsay. Defendant R. T. Electric argues that the statements should be admitted under the residual hearsay exception, but the Court does not find sufficient circumstantial guarantees of trustworthiness to support admission. Because the alleged statements by Paul Dalluge to Mr. Gille are hearsay and do not fall under a recognized hearsay exception, Mr. Gille may not present testimony at trial regarding these alleged statements by Paul Dalluge.

Caterpillar also asks that Mr. Gille be barred from testifying regarding any assumptions he may have drawn from the alleged statements, including assumptions that Anchor told Mr. Dalluge about a lock out/tag out policy change and/or that Anchor would utilize spotters in place of a lock out/tag out procedure. (Dkt. No. 87 at 3.) R&R responds that Mr. Gille made "observations of the production crew, as a whole," and that he may testify on "certain subject areas" which would not be inadmissible hearsay. (Dkt. No. 107 at 2-3.) R. T. Electric adds that Mr. Gille may testify regarding his observations that other workers had stopped locking the crane out. (Dkt. No. 119.)

Mr. Gille is free to testify regarding personal observations regarding the crew as a whole, including that "nobody else was doing [lock out/tag out]." (Dkt. No. 107 at 2.) However, the Court agrees that any assumptions Mr. Gilles may have drawn regarding what Anchor may have told Paul Dalluge regarding lock out/tag out would be an extension of Mr. Dalluge's alleged statements and should be barred as hearsay. Accordingly, Caterpillar's motion to bar any testimony from Mr. Gilles derived from Paul Dalluge's alleged statements regarding lock out/tag out will be granted.

**D. Caterpillar's Motion to Exclude the Testimony and Expert Report of Thomas R. Barth (Dkt. No. 88)**

Caterpillar seeks to exclude the testimony of R. T. Electric expert Thomas R. Barth on three grounds: (1) Mr. Barth is not qualified to offer testimony on crane design; (2) Mr. Barth's opinion faulting crane operator Thomas Buyarski for not seeing Mr. Dalluge elevated in the scissor lift prior to the accident in question is not a subject of proper expert testimony;

5

(3) Mr. Barth's opinion that Anchor's negligence was the sole cause of the accident in question is unreliable. (Dkt. No. 89 at 2.)

Plaintiff's first objection is not well founded. As Plaintiff points out, Mr. Barth is not an engineer. However, it does not appear that Mr. Barth will testify regarding the technical mechanics of crane design. While such testimony would be outside Mr. Barth's expertise, it would also be outside the scope of this lawsuit. However, if the expected testimony is limited to the presence or absence of typical safety features and their use in crane operation, the Court cannot say that such testimony would be irrelevant or outside Mr. Barth's area of competence.

Plaintiff's second objection, however, is well taken. Any conclusion by Mr. Barth that crane operator Thomas Buyarski was negligent for failing to see the elevated aerial lift because he was allegedly "talking and not paying attention to his surroundings" is outside the proper scope of expert testimony and invades the province of the jury. While Mr. Barth may testify regarding proper crane operating procedure and behavior, the particulars of why Mr. Buyarski did not see Mr. Dalluge in the elevated lift is a question of fact for the jury to resolve based on testimony from fact witnesses. Opinion testimony on that issue is barred.

Finally, Plaintiff contends that Mr. Barth's opinion that Anchor's conduct was the sole cause of the accident should be barred as unreliable because Mr. Barth did not consider the impact of Mr. Dalluge's behavior and is not an expert on aerial lift operation. (Dkt. No. 89 at 6.) The Court finds that these perceived flaws should go to the weight of Mr. Barth's

6

testimony rather than its admissibility. Accordingly, Caterpillar's motion to exclude the testimony of Mr. Barth will be granted with respect to his conclusions as to why Mr. Buyarski failed to see Paul Dalluge in the aerial lift, and denied in all other respects.

**E. Caterpillar's Motion to Exclude Testimony and Expert Report of Kenric Van Wyk (Dkt. No. 90)**

Defendant R&R retained Kenric Van Wyk, an acoustic engineer, to review certain discovery documents and offer comments concerning the scope of work required under R&R's contract with Caterpillar. Mr. Van Wyk's report offered the following opinion:

> Prior to the date of the accident (July 2, 2008), R&R understood their work in this area, including the paging system, to be complete (June 16, 2008). We understand that R&R understood their contractual obligations to be finished, an occupancy permit had been issued, and work by the Owner was already underway.
> We have not seen any evidence of a punch list or follow up documentation to suggest that work on the paging system needed further modifications of additions. In fact, the absence of such punch list would indicate that the paging system was operating as contracted.
> Caterpillar is a large corporation with sophisticated facility staff. If there were requests from Caterpillar that the paging system was not operating according to their satisfaction, we would expect and anticipate that the proper communication channels would have been followed with documentary evidence of requests from the owner or operator to this effect.

(Dkt. No. 91, Ex. A.)

The opinions offered by Mr. Van Wyk all concern whether the activities being performed by R. T. Electric at the time of the accident fall within the scope of R&R's contract with Caterpillar. However, Mr. Van Wyk is not a legal expert, and cannot offer opinion testimony on the scope of the contract in question.

7

Additionally, Mr. Van Wyk is not qualified to testify regarding the scope of "ordinary construction." At his deposition, Mr. Van Wyk testified that neither he nor his company perform any construction or installation work, and that he has never been personally involved in the installation of a paging or other audio system. (Dkt. No. 91, Ex. B.) His expertise is in the design of sound systems, not the intricacies of construction contracts. While Mr. Van Wyk may be qualified to offer scientific testimony on "acoustic, noise, and vibration," (Dkt. No. 91, Ex. C), he is not qualified to offer opinions regarding the significance of punch lists, construction documentation, the sophistication of Caterpillar, communication channels at a work site, or R&R's understanding of its contractual obligations.

Finally, even setting aside Mr. Van Wyk's qualifications, the opinions offered in his report do not show or reflect any scientific, technical, or other specialized knowledge.

Accordingly, the Court finds that Mr. Van Wyk opinions are not within his professed area of expertise, that they are not based on valid scientific or other specialized knowledge, and that they would not assist the trier of fact. Accordingly, the testimony and expert report of Kenric Van Wyk will be excluded.

**F. Caterpillar's Motion to Exclude Testimony and Expert Report of Ralph L. Barnett (Dkt. No. 92)**

(1) Opinions as to lock out/tag out procedures and standards

During his deposition, Mr. Barnett opined that industry standards and applicable regulations would place different requirements on R. T. Electric concerning the use of the lock out/tag out procedure depending on whether the site of the accident remained a

8

"construction" site or was in fact a "production" site. Mr. Barnett had no opinion on whether the site was in fact a construction or production site at the time of the accident. Plaintiff argues that Mr. Barnett's testimony should be barred as unhelpful to the jury because he takes no position regarding whether the accident occurred at a production or construction site.

Additionally, Plaintiff argues that Mr. Barnett's admitted failure to consider the effect of any contractual agreement by the parties to undertake additional or more stringent safety measures (including lock out/tag out) could mislead the jury into believing that contractual agreements are optional.

Plaintiff is correct that a contractual agreement to undertake safety measures such as lock out/tag out would not be undermined simply because regulations did not require those measures. However, should the trier of fact find that no such contractual obligation was in effect, general safety standards and regulations would be relevant. Because Plaintiff takes the position that both a contractual agreement *and* relevant regulations required the use of lock out/tag out, Defendants will be permitted to present opinion testimony as to the regulations in effect. However, Defendants are directed to take care to avoid any suggestion that the absence of regulations compelling the use of lock out/tag out would nullify any contractual agreement to use the procedure. Mr. Barnett may offer his opinion as to what applicable standards and regulations would require in the case of a construction or production site. However, in light of the admittedly limited scope of his opinion, he may not offer an ultimate conclusion as to whether Mr. Dalluge was required to use the procedure.

9

(2) Opinions as to "acoustical assignment"

Plaintiff also seeks to bar Mr. Barnett's expected testimony that there is no evidence of acoustical assignment. Mr. Barnett's report states that the record "shows no evidence of an acoustical assignment," citing a lack of any request for acoustical adjustments, punch lists, change orders, or "extra work" documentation. (Dkt. No. 93, Ex. B at 10.) The implication of Mr. Barnett's report is that R. T. Electric was operating outside the scope of R&R's contract with Caterpillar/Anchor when Mr. Dalluge utilized the scissor lift to inspect the speakers. *Id.* at 31 ("On July 2, 2008, R. T. Electric was making acoustic adjustments on the speaker system. This activity was not covered by the lump sum contract between R&R Steel and Anchor/Caterpillar. It is not clear whether R. T. Electric was providing a courtesy service, or was operating under a misunderstanding, or whether it had a direct contractual relationship with Anchor/Caterpillar.").

As with the similar opinions of Mr. Van Wyk, the Court finds that this opinion is not founded on any scientific, technical, or other specialized knowledge. Furthermore, the opinion is essentially a legal opinion, which is outside of Mr. Barnett's competence. Finally, Mr. Barnett's opinion constitutes extrinsic evidence being offered to interpret an integrated contract. Because neither party has sought a finding by this court that the contract is ambiguous, such extrinsic evidence is barred by the parole evidence rule. Accordingly, Mr. Barnett's opinions concerning "acoustical assignment" and the scope of R&R's contract with Caterpillar/Anchor will be barred.

**G.  R&R's Motion Regarding Fault and Indemnification (Dkt. No. 94)**

In this overly broad motion, R&R seeks to foreclose broad categories of potential witnesses and testimony concerning fault and indemnification on grounds that (1) some potential witnesses may lack personal knowledge, (2) "a breach of contract duty on the part of R&R to Plaintiff, would not be shown, where Anchor was the only Defendant in the Dalluge litigation," and (3) a breach of contract would not be shown "where Anchor had assumed possession and control of the screw machine addition at the premises, which renders an indemnification provision inapplicable to the circumstances of this accident." (Dkt. No. 94 at ¶ 4.)

First, R&R's vague suspicions that certain witnesses may be called to testify on matters which might be outside of their personal knowledge is not an appropriate basis for excluding whole areas of testimony. The subjects identified by R&R — such as the status of the work site, the applicability of the lock out/tag out procedure, and the nature of the work being performed by R. T. Electric — are all relevant issues in need of factual development. R&R may rest assured that all witnesses will be required to satisfy foundational requirements.  Any objections which may arise as to the personal knowledge of particular witnesses may be dealt with at trial.

Second, R&R's assertion that a breach of contract would not be shown "where Anchor was the only Defendant in the Dalluge litigation" is contrary to the Court's opinion deciding the parties' motions for summary judgment.  This motion in limine and the recently filed

11

proposed pretrial order[1] indicate Defendants' intention to reargue R&R's position that the complaint of the underlying Dalluge suit is somehow determinative of its obligation to indemnify Caterpillar under the terms of R&R's contract. The Court has already rejected this argument:

> R&R's argument that the underlying lawsuit by Dalluge's estate precludes indemnification is a misapplication of insurance principles to the present litigation. Plaintiff's suit is for breach of contract; thus, the terms of the contract govern, and whether or not the underlying lawsuit alleged claims against R&R or otherwise triggered an obligation to defend Caterpillar under insurance principles is immaterial. The question at hand is whether the contract between Caterpillar and R&R is applicable to the circumstances of the accident, and if so, whether the contract and circumstances entitle Plaintiff to indemnification.

(Dkt. No. 82 at 4.) The complaint in the Dalluge suit does not define the contractual indemnity obligations of R&R. Defendants are on notice that this argument will not be permitted at trial.

Third, R&R's argument that a breach would not be shown "where Anchor had assumed possession and control of the screw machine addition at the premises, which renders an indemnification provision inapplicable to the circumstances of this accident," (Dkt. No. 94 at ¶ 4), is a valid issue for trial. However, R&R may not presume victory on this point in

---

[1] The proposed final pretrial order lists the following as legal questions which need to be resolved:
> 1. Do the allegations in the Dalluge Complaint against Anchor define the contractual indemnity obligations of R&R?
> 2. Was the Dalluge complaint against Anchor, a claim alleging sole negligence of Anchor as compared to any negligence of R&R?

(Dkt. No. 123 at 16.)

12

an effort to exclude the very testimony which may or may not support it.

For the reasons discussed, R&R's motion in limine regarding fault and indemnification (Dkt. No. 94) will be denied.

**H. Caterpillar's Motion to Bar Testimony Regarding the Alleged Removal of Paul Dalluge's Lock (Dkt. No. 99)**

Caterpillar moves the Court to bar and prohibit any mention or reference to an unidentified person having allegedly removed Paul Dalluge's lock from the bridge crane's hasp an some point a couple of weeks before the accident.

The sole basis for this allegation is the testimony of Joseph Gille, who claims he was told of the incident by Dalluge. Mr. Gille also claims that he saw Dalluge confront an unidentified person regarding the cutting of the lock, though he admits he could not overhear the conversation.

The Court finds that any testimony or reference to this incident would be based on hearsay statements allegedly made by Dalluge to Mr. Gille. The statements fall under no hearsay exception, and Mr. Gille's testimony that he saw Dalluge confront a maintenance worker concerning the cut lock is not a sufficient guarantee of trustworthiness where Mr. Gille admittedly could not hear the conversation and cannot identify the worker who allegedly cut the lock.

Furthermore, the relevance of this evidence is questionable. Whether or not Dalluge's lock had been cut several weeks prior to his accident sheds little if any light on the circumstances of that accident.

13

Finally, such evidence is likely to be more prejudicial than probative, as any reason or explanation for the alleged cutting of Dalluge's lock would be pure speculation which could confuse or distract the jury. Accordingly, Caterpillar's motion to bar testimony regarding the alleged removal of Paul Dalluge's lock several weeks before the accident (Dkt. No. 99) will be granted.

**I. R&R's Motion to Exclude Evidence of Insurance Coverage (Dkt. No. 103)**

R&R moves the Court to exclude any evidence of the existence, amount, or scope of Defendants' insurance coverage. (Dkt. No. 103.) It is well settled that evidence of whether or not a defendant carries liability insurance is not admissible or relevant to the case in and of itself, and that such evidence normally is prejudicial. Fed. R. Evid. 411, *Higgins v. Hicks Co.*, 756 F.2d 681, 684 (8th Cir. 1985).

Caterpillar initially opposed this motion on grounds that admission of certain communications between Caterpillar and West Bend Mutual Insurance Co. (R&R's insurer) was necessary to establish that R&R had timely notice of the Dalluge suit and Caterpillar's demand that R&R defend and indemnify it. (Dkt. No. 113.) However, the parties have since stipulated in their proposed pretrial order that:

> On or about February 20, 2009, Caterpillar demanded R&R defend and indemnify Anchor of and from the Dalluge Suit pursuant to the Caterpillar/R&R Contract.
> R&R received Caterpillar's demand letter on or about February 23, 2009.

(Dkt. No. 123 at 9.) As the question of notice regarding the underlying suit and Caterpillar's demand to defend and indemnify is no longer contested, communications between Caterpillar

14

and West Best are no longer needed for this purpose. Accordingly, R&R's motion to exclude evidence of insurance coverage (Dkt. No. 103) will be granted.

**J. R&R's Motion Regarding Lock Out/Tag Out (Dkt. No. 104)**

R&R asks the Court to require that "any testimony on the subject of LOTO be subject to a proper evidentiary foundation . . . ." Of course, proper foundation is required for all evidence; it is not clear whether this motion raises any specific issue which the Court can address.

To the extent that R&R's motion seeks a blanket prohibition or restriction on testimony concerning lock out/tag out, the motion is denied. *See supra* Part G. To the extent that R&R seeks to require Caterpillar's expert James Miller to perform some special test "demonstrat[ing] familiarity with the Standards involved" with lock out/tag out, the motion is also denied. Any weaknesses which Defendants may perceive in Mr. Miller's testimony and interpretation regarding standards and regulations may be explored through cross examination.

Dated: April 13, 2012 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE